IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

FERNANDO HERRERA,

        Plaintiff,

v.                                                                                                         No. CIV 00-766 BB/DJS

THE COUNTY OF SANTA FE; THE
SANTA FE COUNTY DETENTION
CENTER; CORNELL CORRECTIONS,
INC.; RUDY ESTRADA, LAWRENCE
BARRERAS, WILFRED ROMERO,
JAMES COATS and DANIEL BOLTON,
individually and in their capacities as
employees of THE SANTA FE COUNTY
DETENTION CENTER and/or
CORNELL CORRECTIONS, INC.,

        Defendants.

## OPINION AND ORDER

       THIS MATTER comes before the Court for consideration of a motion to dismiss filed by defendant Santa Fe County. (Doc. 23). The Court held a hearing and has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the motion will be denied. In addition, however, the Court raises *sua sponte* the issue of exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. As discussed below, the parties will be required to submit briefs, supported by accompanying affidavits, documents or other materials, addressing this question.

**Procedural History**

Plaintiff originally filed suit against the defendants named in the caption of this opinion, as well as the State of New Mexico, the New Mexico Corrections Department, and a number of individual employees of Santa Fe County. Plaintiff voluntarily dismissed his claims against the state, the state agency, and the county employees, leaving only the county itself, the county's detention center, a privately-owned corporation, and employees of that corporation as defendants. Santa Fe County filed a motion to dismiss, which is the subject of this opinion. The remaining defendants did not participate in the attempt to dismiss the case. The Court held a hearing on the county's motion to dismiss, and ordered Plaintiff to submit a statement outlining the factual basis for Plaintiff's claims against the county. Plaintiff complied with that order. (Doc. 37) In addressing the motion to dismiss, the Court has considered the allegations of Plaintiff's first amended complaint as well as the facts contained in the statement submitted in response to this Court's order.

**Facts[1]**

Defendant was incarcerated in the Santa Fe County Detention Center at the time of the incidents leading to this lawsuit. He had been transported there from a corrections facility in Las Cruces, New Mexico. During the transport he told Deputy Martin Rivera, an employee of Santa Fe County, that he would be beaten by detention center guards as soon as they had a chance to do so. The detention center was under the management and control

---

[1] In setting out the relevant facts of the case, the Court, as it must, accepts the well-pleaded facts contained in the amended complaint and in the "statement of factual basis" as true.

of Defendant Cornell Corrections, Inc., and the guards at the detention center were Cornell employees. In October 1998, a federal inmate was placed in the cell next to Plaintiff's. The federal inmate proved to be disruptive, causing disturbances several times, as a result of which the inmate was roughed up by guards. Plaintiff then complained about being next to the federal inmate, but was not moved. On November 10, 1998, the federal inmate created another disturbance, while Plaintiff was out of his cell. The area was stormed by guards, who threatened Plaintiff and then left to retrieve a pellet shotgun. Subsequently, Defendant Romero fired two shots, one of which hit the federal inmate and one which grazed Plaintiff's head. Then, with Defendant Romero urging him on, Defendant Coats shot Plaintiff twice, hitting him in the left side and the left testicle. Other guards then knocked Plaintiff to the floor, and Defendant Bolton began kicking Plaintiff repeatedly by jumping on his head. Plaintiff was taken to a hospital for treatment of his injuries. Plaintiff later filed this civil-rights lawsuit under 42 U.S.C. § 1983. Plaintiff's complaint also raises state-law negligence claims.

**Discussion – Motion to Dismiss**

It is readily apparent that almost all of Plaintiff's allegations of wrongdoing concern actions of Cornell employees, not county employees. The only mention of county involvement in the incident in question is the fact that Plaintiff warned Deputy Rivera that the detention center guards would beat Plaintiff. This warning was given over a month before the November 10 incident. Relying on the lack of any allegation of direct county involvement, Santa Fe County has asked to be dismissed from the case. Plaintiff's response

3

is to lump the county and Cornell Corrections together, claiming that the actions of Cornell employees are tantamount to actions of county employees or agents. Plaintiff also appears to suggest that Cornell and the county are automatically liable for the actions of the Cornell employees. The correct legal analysis, however, is not so simple.

A county may not be held liable under a *respondeat superior* theory in a § 1983 case. Instead, a plaintiff seeking to impose § 1983 liability on a county must identify a custom or policy that caused the plaintiff's injury. *J.B. v. Washington County*, 127 F.3d 919, 923 (10th Cir. 1997) (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Such a policy or custom may be established by proving the existence of an express policy or custom, or the provision of inadequate training, or a practice so widespread as to constitute custom or usage with the force of law. *West v. Board of County Comm'rs*, 4 F.3d 848, 855 (10th Cir. 1993); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir. 1993). In the Court's view, there are two possible ways Plaintiff might attempt to establish the requisite county custom or policy in this case--either by proving the county itself had a custom or policy that led to the harm suffered by Plaintiff, or by showing the county should be legally responsible under § 1983 for the actions or inactions of Cornell Corrections or Cornell employees. The Court will address the latter possibility first.

It is settled in this District that Cornell, as the manager and operator of the detention center, would be considered a state actor for purposes of § 1983, and would therefore be

4

amenable to suit under that provision.[2]  *See Giron v. Corrections Corp. of America,* 14 F. Supp. 2d 1245, 1248-49 (D.N.M. 1998); *see also Willis v. U.S. Corrections Corp.*, 1996 WL 61797, *4 (6th Cir. 1996) ("It is clear that U.S. Corrections Corporation, as a private entity under contract with an agency of the state to perform a traditional state function, is subject to suit under § 42 U.S.C. 1983 as one acting 'under color of state law.'"); *cf. West v. Atkins*, 487 U.S. 42, 54 (1988) (physician employed by state to provide medical services to state prison inmates acted under color of state law for purposes of § 1983 when treating inmate's injury).  That is not the same, however, as saying that Santa Fe County, the government entity contracting with Cornell, may also be subjected to a § 1983 suit based on the actions of Cornell employees.

Very few, if any, courts have addressed the specific issue of municipal or county liability, under § 1983, for the actions of a private company operating a jail or detention center.  The Court was able to locate only one case suggesting an appropriate analysis.  In *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985), the estate of a deceased county jail prisoner filed a § 1983 action against the county and a private health care

---

[2]This statement should not be construed as expressing any opinion concerning Cornell's potential liability under § 1983 in this case.  Cornell, as the employer of the detention center guards, may or may not be responsible for their actions insofar as § 1983 is concerned.  *See, e.g., Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (when private entity contracts to provide inmate services it becomes functional equivalent of city and therefore liable under § 1983 if it violates its own policy or custom; but it is not liable under *respondeat superior* doctrine); *Taylor v. Plousis*, 101 F.Supp.2d 255, 263-64 (D.N.J. 2000) (pointing out that majority of courts that have considered the issue have decided that a private corporation performing a municipal function may not be held vicariously liable for its employees' actions under § 1983, but may be found liable only if the corporation has established an unconstitutional custom or policy; noting, however, in extensive footnote, that public policy considerations may not support this result).

provider, among others. The Eleventh Circuit, while holding that the plaintiff had adequately alleged the possibility that the county's own actions or policies contributed to the prisoner's death, made the following observations: (1) if a constitutional tort committed by an employee of the private health care provider was not a result of the policy or custom of that private entity, the county would not be liable for the constitutional tort; to hold the county liable would require application of the *respondeat superior* doctrine, which is not permitted under § 1983; (2) however, where the county has delegated final authority to make decisions to a private entity such as the health care provider in that case, the policies and customs of the private entity become the policies and customs of the county; and (3) if the county, expressly or by default, permitted others to determine policy, the county is liable for their actions if the policy proves unconstitutional. 769 F.2d at 705-06, ns. 8, 9, 11. The *Ancata* court based these observations on the fact that, where a county turns over final decision-making or policymaking authority to a certain employee, the county is liable for any decisions or policies of that employee. Similarly, the court reasoned, where the county turns over a government function such as providing inmate health care to a private company, and also grants that company the authority to make decisions concerning the level of care to be provided, the county has in effect delegated final policymaking authority to the private company and is liable for any policies established by the company. *Id.*

    This portion of *Ancata* has been discussed in two cases involving jails. Unfortunately, neither case involved a situation in which a private company operated the jail on behalf of a governmental entity, and the cases reached opposite conclusions with respect to the issue

involved in this case. In *Deaton v. Montgomery County, Ohio*, 989 F.2d 885 (6th Cir. 1993), the appellate court addressed the question of "whether a county, which contracts with a municipality to manage and operate its jail facilities...may be held liable under 42 U.S.C. § 1983 for constitutional deprivations resulting from custom, policy or practice of the municipality." *Id.* The Sixth Circuit held that the county would not be liable by default for any unconstitutional custom, policy, or practice of the city. In doing so, the court distinguished *Ancata* on the basis that in *Ancata*, the county had contracted with a private entity rather than another branch of government. The court reasoned that unlike the *Ancata* situation, both the county and the city had statutory authority to house prisoners, and both the county and the city were subject to restrictions imposed by state law. 989 F.2d at 888.

A federal district court in Boston disagreed with *Deaton*'s conclusion (albeit without mentioning *Deaton*) in *Ford v. City of Boston*, 154 F. Supp. 2d 131 (D. Mass. 2001). In *Ford* it was the city that had contracted with the county to house city prisoners. The *Ford* opinion determined that the city would be liable under § 1983 for any unconstitutional policies or customs adopted or practiced by the county. In doing so, the *Ford* court compared the situation before it to a situation in which the city had contracted with a private party to run a detention facility. The court had no doubt that the city would be responsible for an unconstitutional policy or custom of the private party, and saw no reason to reach a different result simply because the city had contracted with another governmental entity rather than a private party. *Id.*

This Court need not resolve the conflict between *Deaton* and *Ford*, since this case does not involve one governmental entity contracting with another.[3] Instead, this case presents the type of case as to which *Ancata*, *Deaton*, and *Ford* all appear to agree--under the rationales of all three of these cases, the county may be held liable for a custom or policy established by Cornell, because the county has contracted with Cornell to perform a significant public function. Furthermore, this conclusion makes sense under traditional municipal-liability analysis. As noted in *Ancata*, if a local government delegates final policy-making authority to a particular employee, any custom or policy created by that employee is the custom or policy of the local government as well. Here, by contracting with Cornell to take over management and operation of the detention center, the county delegated final policy-making authority for the operation of the detention center to Cornell.[4] Any

---

[3]The Court notes that the *Ford* opinion cites *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001), in support of its conclusion. In *Young*, however, the Eighth Circuit emphasized that the city knew about the county's practices concerning strip searching, and held that the jury could assign liability to the city on that basis. *Young*, therefore, is more aptly described as a case involving the city's own custom or practice, of ignoring unconstitutional treatment of its prisoners, than a case assigning derivative liability to a city based solely on the city's act of contracting with another entity to house its prisoners.

[4]Under New Mexico law, counties are authorized to contract with a private independent contractor to operate a county jail, and "jailers" employed by these private entities are granted status as peace officers under state law. NMSA § § 33-3-27 and 33-3-28. However, counties are required to ensure that the jails are operated properly, by inspecting the jails at least twice per year for "cleanliness and discipline" and compliance with law. NMSA § 33-3-4. The fact that the County retains oversight responsibilities over the operation of its detention center, and has therefore not delegated complete authority to Cornell for the operation of the jail, lends even more force to the *Ancata* approach imposing § 1983 liability on the County for any unconstitutional policies or customs Cornell may have adopted or created.

custom or policy established by Cornell with respect to such operation, therefore, constitutes a custom or policy of the county for purposes of § 1983 liability. *See Ancata*.

The remaining question is whether Plaintiff has adequately alleged a custom or policy of Cornell, potentially giving rise to § 1983 liability, which can be attributed to the county.[5] One of the allegations Plaintiff has made, in an attempt to raise a claim of municipal liability, is that the county and Cornell failed to train Cornell's employees properly, to prevent instances of brutality such as the one allegedly suffered by Plaintiff. Plaintiff did not, however, provide any details concerning the alleged failure to train, relying instead on a bald assertion that the training was inadequate. Some courts have held that such a conclusory assertion of failure to train is not enough to state a claim for municipal liability. *See, e.g., Oparaji v. City of New York*, 1998 WL 432988 (2d Cir. 1998); *Pahler v. City of Wilkes-Barre,* ___ F. Supp. 2d ___, 2001 WL 1887405 (M.D. Pa. 2001). Other courts, however, have held that under *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (rejecting heightened pleading requirement for municipal liability claims), it is sufficient to merely claim there was a failure to train, and the failure to train caused a constitutional deprivation. *See, e.g., Spencer v. Sheahan*, 1999 WL 438998 (N.D. Ill. 1999); *Ramirez v. United States*, 998 F. Supp. 425, 436 (D. N.J. 1998); *Jacobs v. Port Neches Police Dep't*, 1996 WL 363023 (E.D. Tex. 1996); *Roman v. City of Chicago Dep't*

---

[5]As noted above, Plaintiff could also survive the county's motion to dismiss if he had adequately alleged a custom or policy of the county itself, rather than a custom or policy derived from Cornell. The Court need not decide whether Plaintiff has done so, given the discussion below concerning Cornell's custom or policy.

*of Police*, 1995 WL 66355 (N.D. Ill. 1995). The complaint found adequate by the Supreme Court in *Leatherman*, like Plaintiff's complaint in this case, contained failure-to-train language characterized by the district court as "boilerplate." *See* 755 F. Supp. 726, district court decision reversed in *Leatherman*. The Supreme Court stated that, given the applicability of notice-pleading rules to claims of municipal liability, federal courts and litigants "must rely on summary judgment and control of discovery" (rather than 12(B)(6) motions) "to weed out unmeritorious claims sooner rather than later." 507 U.S. at 168-69. The *Leatherman* opinion thus appears to dictate caution, so the Court will find that Plaintiff has adequately stated a claim that Cornell, and therefore the County of Santa Fe, had a policy or custom of failing to properly train detention center employees, and that this policy was a cause of the alleged deprivation of his constitutional rights. For this reason, the county's motion to dismiss will be denied at this time.[6]

**PLRA Exhaustion of Remedies**

In February of this year, the Supreme Court decided that inmate claims alleging the use of excessive force by guards are subject to the requirements of the PLRA, including the requirement that any available administrative remedies be exhausted before a § 1983 lawsuit may be filed by the inmate. *Porter v. Nussle*, 534 U.S. 516 (2002). In addition, the PLRA's exhaustion requirement applies to cases, such as this one, in which a private entity is operating the prison or jail. *See Murphy v. Jones*, 2001 WL 1450636 (9th Cir. 2001); *Treat*

---

[6]As a result, the Court need not decide whether Plaintiff has alleged a sufficient number of excessive-force incidents to constitute a custom or policy actionable under § 1983.

*v. Corrections Corp. of America*, 2001 WL 856981 (6th Cir. 2001). Finally, the exhaustion requirement is a mandatory precondition to the maintenance of a § 1983 lawsuit by a prisoner, and this Court must be satisfied the exhaustion requirement has been fulfilled before the case may proceed. *See Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir. 1997), *abrogated on other grounds, Booth v. Churner*, 532 U.S. 731 (2001); *see also Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002) (remanding appeal to district court for development of record concerning exhaustion of remedies; stating that if available remedies were not exhausted, case must be dismissed without prejudice). The Court will therefore require the parties to address this issue by filing short memoranda, accompanied by any necessary affidavits or documents, discussing the following two questions: (1) whether, at the time of the main incident in question, November 10, 1998, there was an administrative grievance procedure available to Plaintiff under which he could protest the alleged actions of the detention center guards; and (2) if such a procedure was available, whether Plaintiff pursued his remedies under that procedure. These memoranda should be submitted within thirty (30) days of the date this opinion is filed.

**ORDER**

An Opinion having been issued in this case, it is hereby ORDERED as follows: Defendant County of Santa Fe's motion to dismiss (Doc. 23) is DENIED; and the parties are ordered to submit the exhaustion-of-remedies memoranda discussed in the opinion, within thirty (30) days of this date.

Dated this 17th day of July, 2002.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Robert P. McNeill

**For Defendants**:
Michael S. Jahner